# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BEVERLY BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09-CV-5393 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| PATELCO CREDIT UNION, et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Beverly Brown's ("Plaintiff") request for attorney fees and her bill of costs [49]. Defendant Continental Recovery & Towing, Inc. ("Continental") has objected to Plaintiff's request for attorney fees [64] on various grounds. For the reasons explained below, Plaintiff's motion [49] is granted in part and denied in part. The Court awards Plaintiff $2,287.50 in attorneys' fees and $230.00 in costs, for a total award of $2,517.50.

**I.     Background**

Plaintiff initiated this action by filing a complaint against Defendants Continental, Patelco Credit Union ("Patelco"), and Wainscott (a Patelco employee/agent) alleging violations of the Fair Debt Collections Practices Act ("FDCPA") and state statutes (as to Continental) as well as defamation (as to Continental, Patelco, and Wainscott) and negligence (as to Patelco). Pl.'s Second Am. Compl. [27 ¶¶ 1-23.] Briefly, Plaintiff alleged that Defendant Patelco, a creditor conducting business in Cook County, Illinois, engaged Defendant Continental to repossess Plaintiff's vehicle based on the false assumption that Plaintiff had become delinquent on her payments. [*Id.* ¶¶ 10-12.] In furtherance of their collection attempts, Continental placed a postcard at Plaintiff's home on June 2, 2009, that read "If we don't here [sic] from you within 24

hrs., this matter may result in your arrest." [*Id.* ¶¶ 13-14.] Plaintiff alleged that the discovery of the postcard by third parties led to injuries of a personal and pecuniary nature in violation of the Fair Debt Collections Practices Act[1]. [*Id.* ¶¶ 19-21.]

On April 21, 2010, pursuant to Rule 68, Continental made an Offer of Judgment for Plaintiff in the amount of $4,505 "plus reasonable attorneys' fees and costs accrued to date in an amount to be determined by the court." [55-1, at 1.] Plaintiff accepted the offer on April 29, 2010 [71-1, at 1]. On July 22, 2010, Plaintiff accepted an Offer of Judgment pursuant to Rule 68 in the amount of $2,500 from Defendants Patelco and Wainscott, which *included* attorneys' fees and costs. [63, at 11.] The Court denied Plaintiff's fee motion as to Patelco and Wainscott on December 28, 2010. [*Id.*] The Court now analyzes the itemized fees Plaintiff requested from Defendant Continental pursuant to the Offer of Judgment.

### A. Plaintiff's Attorneys' Fees Request

Plaintiff has included [see 49-1, at 2] an itemized breakdown of his fee request:

| Date | Work Performed | Hours |
|---|---|---|
| | | *In 1/6 of an hour* |
| 6/2/2009 | Telephone conference with client | 0.2 |
| 6/4/2009 | Telephone conference with client | 0.1 |
| 6/8/2009 | Telephone conference with client | 0.2 |
| 6/18/2009 | Telephone conference with client | 0.1 |
| 6/18/2009 | Telephone conference with client | 0.2 |
| 6/26/2009 | Telephone conference with client | 0.1 |
| 7/6/2009 | Letter to client | 0.2 |
| 7/28/2009 | Telephone conference with client | 0.1 |
| 7/30/2010 | Telephone conference with client | 0.1 |
| 8/28/2009 | Telephone conference with client | 0.1 |
| 9/1/2009 | Drafted complaint at law | 2 |
| 9/18/2009 | Telephone conference with client | 0.2 |
| 11/17/2009 | Drafted Initial Status Report | 2 |
| 12/6/2009 | Drafted First Amended Complaint at Law | 2 |

---

[1] 15 U.S.C. § 1692k(a)(1); § 1692k(a)(2)(A); § 1692k(a)(3).

| Date | Description | Hours |
|---|---|---|
| 12/7/2009 | Completed Drafting First Amended Complaint, filed same | 2 |
| 12/7/2009 | Telephone conference with OC Holloway | 0.1 |
| 12/7/2009 | Drafted Summons, and Corrected Summons for CRI, scanned yellow card | 2 |
| 12/7/2009 | Sent First Amended Complaint at Law to Process server | 0.1 |
| 12/8/2009 | Scanned and filed return of service | 0.2 |
| 1/6/2010 | Telephone conference with client | 1 |
| 1/27/2010 | Court for status hearing | 0.5 |
| 2/10/2010 | Telephone conference with client | 0.2 |
| 3/2/2010 | Telephone conference with client | 0.1 |
| 3/3/2010 | Telephone conference with client | 0.2 |
| 3/3/2010 | Draft Initial Status Report, researched Continental Recovery, drafted Second Amended Complaint printed out court call. | 1.3 |
| 3/4/2010 | Court for status, printed saved and docketed order | 1.3 |
| 3/4/2010 | Filed Second Amended Complaint and Notice of Filing | 0.3 |
| 3/4/2010 | Drafted Summons, sent same to intake of Clerk | 0.2 |
| 3/4/2010 | Saved signed summons, sent same with Complaint to process server | 0.2 |
| 4/7/2010 | Telephone conference with client | 0.1 |
| 4/20/2010 | Conference regarding status hearing | 0.2 |
| | **CHANGE IN TIME KEEPING TO QUARTER HOUR INCREMENTS** | |
| 4/20/2010 | Filed appearance | 0.25 |
| 4/21/2010 | Court status hearing | 1 |
| 4/21/2010 | Telephone conference with client | 0.25 |
| 4/22/2010 | Telephone conference with client | 0.25 |
| 4/22/2010 | Telephone conference with client | 0.25 |
| 5/5/2010 | Telephone conference with opposing counsel Hill | 0.25 |
| 5/5/2010 | Email from opposing counsel Hill | 0.25 |
| 5/11/2010 | Review release | 0.25 |
| 5/11/2010 | Email to opposing counsel Hill regarding changes needed to release | 0.25 |
| 5/12/2010 | Telephone conference with client | 0.25 |
| 5/13/2010 | Drafted letter to client, faxed same | 0.25 |
| 5/19/2010 | Telephone conference with client | 0.25 |
| 5/24/2010 | Meeting with client | 0.25 |
| 6/24/2010 | Email from opposing counsel Holloway | 0.25 |
| 7/20/2010 | Telephone conference with client | 0.5 |
| 7/8/2010 | Email from opposing counsel Holloway | 0.25 |
| | | |

|  |  |  |
|---|---:|---:|
|  | *Total* | 18 1/6[2]: |
|  |  | $275.00/hr |
|  | *Total Hourly Fee* | 4,995.83 |
|  | *Expenses* |  |
|  | *Filing Fee* | $350.00 |
|  | *Service Fee on Continental Recovery and Towing* | $55.00 |
|  | *Service Fee of Patelco* | $55.00 |
|  | *Total Expenses* | $460.00 |
|  |  |  |
|  | ***Grand Total*** | **$5,455.83** |

### B. Defendant Continental's Challenge

Defendant Continental objects to all but the following charges:

| Date | Work Performed | Hours |
|---|---|---:|
| 3/3/2010 | Draft Initial Status Report, researched Continental Recovery, drafted Second Amended Complaint printed out court call. | 1.3 |
| 3/4/2010 | Filed Second Amended Complaint and Notice of Filing | 0.3 |
| 3/4/2010 | Drafted Summons, sent same to intake of Clerk | 0.2 |
| 3/4/2010 | Saved signed summons, sent same with Complaint to process server | 0.2 |
| 4/21/2010 | Court status hearing | 1 |
| 4/21/2010 | Telephone conference with client | 0.25 |
| 4/22/2010 | Telephone conference with client | 0.25 |
| 4/22/2010 | Telephone conference with client | 0.25 |
|  | ***Total*** | 2 3/4 |
|  |  | $275.00/hr |
|  | *Total Hourly Fee* | $756.25 |
|  | ***Expenses*** |  |
|  | *Service Fee on Continental Recovery and Towing* | $55.00 |
|  | *Total Expenses* | $55.00 |
|  |  |  |
|  | ***Grand Total*** | **$811.25** |

[64, at 11.]

---

[2] Although Plaintiff computes a total of 18 1/6 hours, the total number of hours set out in the chart appears to be 22.6.

4

## II. Legal Standard

A prevailing plaintiff in a Fair Debt Collection Practices Act ("FDCPA") action is entitled to recovery of "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). In crafting the FDCPA, Congress included this fee shifting arrangement to ensure that able counsel would be awarded a commensurate rate for taking such cases. *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995). When a plaintiff has accepted an offer of judgment on an FDCPA complaint, a reasonable attorney's fee is mandatory. *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997). In determining a "reasonable attorney's fee," the analysis first turns to the attorney's hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). "An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004) (citing *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307 (7th Cir. 1996)). "The burden of proving the market rate is on the applicant." *Stark*, 354 F.3d at 674; *Hensley*, 461 U.S. at 433, and "[w]hile an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services, such affidavits in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiffs' burden." *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000).

As *Hensley* teaches, once the hourly rate is arrived upon, the Court must then analyze the number of hours expended. *Hensley*, 461 U.S. at 433. "In determining the reasonable number of hours, [a] court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'"

*Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley*, 461 U.S. at 434). Further, "when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper*, 223 F.3d at 605; see *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 651, 657-58 (7th Cir. 1985); see also *Hensley*, 461 U.S. at 433 (if plaintiff fails to document hours adequately, court may reduce award accordingly). A court may adjust the fee award upward or downward, depending on a variety of factors, see *Hensley*, 461 U.S. at 430 n. 3 (citing as relevant factors the time and labor required, the novelty and difficulty of the issues, the legal skill required, reputation of the attorneys, and awards in similar cases), and "retains a great deal of discretion" in doing so. *Zagorski*, 128 F.3d at 1167.

### III.    Analysis

#### A.    Contract for Legal Services

Defendant contends that Plaintiff's failure to provide a contract for legal services or any disclosure of fees paid by the client precludes Plaintiff from recovering attorney fees. [64, at 3.] Given that Plaintiff's counsel had a contingency agreement with Plaintiff [71, at 2] and understood the well-established fact that the FDCPA statute allows fee-shifting, the absence of a retainer agreement or record of any fees paid is hardly surprising and certainly does not present a reason to deny the motion for attorneys' fees altogether – especially given Defendant's express agreement in the Offer of Judgment to pay them in a "reasonable" amount.

#### B.    Hourly Rate

The party seeking a fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d

544, 550 (7th Cir. 1999) (citing *Hensley*, 461 U.S. at 433). An attorney's market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Bankston v. State of Ill.*, 60 F.3d 1249, 1256 (7th Cir. 1995) (quoting *Partington v. Broyhill Furniture Indus.*, 999 F.2d 269, 273-74 (7th Cir. 1993)). "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *People Who Care*, 90 F.3d at 1310.

Plaintiff has requested that a fee of $275 per hour be awarded for work performed by Attorney Abbas Merchant ("Attorney Merchant") [71-1 at 2], but Plaintiff's only support for this rate is an award of $275 per hour for a different attorney, Christian D. Elenbaas ("Attorney Elenbaas"). [71 at 2.] Although Attorney Elenbaas assumed responsibility for the case once Attorney Merchant left their law firm, Merchant performed the vast majority of the work on the case. [71-2, 2.] Plaintiff has included an affidavit ("Exhibit B," [71-2]) that refers to a minute order issued by Judge Hibbler granting Attorney Elenbaas $4,180.00 in attorney's fees in an unrelated FDCPA case, but the order does not detail the number of hours worked or the hourly rate charged for that work.[3] Assuming that Attorney Elenbaas did in fact charge $275 per hour, this sort of information is helpful in ascertaining the fair market rate for services rendered in FDCPA cases, but what remains missing is any evidence that Attorney Merchant has charged clients $275 per hour in previous FDCPA cases.

Further, it is left to the Court to infer any similarity between skills or experience of Attorney Elenbaas and Attorney Merchant. While Plaintiff claims that "Attorney Elenbaas has worked on similar matters" [71, at 3], she provides no backup evidence or data supporting the suggestion that Attorney Merchant has the same level of skill and experience as Attorney Elenbaas and thus would command the same rate in the market. See *Spegon*, 175 F.3d at 555

---

[3] *Weaver v. Allied Ass. Receivables, LLC, et al.*, 10-cv-1028.

("the rate that lawyers of *similar ability and experience* in their community normally charge their paying clients for the type of work in question") (emphasis added). Though Attorney Merchant is no longer employed by Robert J. Semrad and Associates, it appears that Attorney Elenbaas was employed by the same firm when he handled the cited case before Judge Hibbler. Even if the two attorneys belong to the same firm, firms quite obviously charge variable rates for their lawyers as a function of their varying skill levels and experience.

Because Plaintiff has not met her burden of proving Attorney Merchant's market rate, the Court considers other factors in calculating attorney's fees including: "(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) (citing *Hensley*, 461 U.S. at 441). Courts in this circuit generally have awarded somewhere in the range of $200 to $300 per hour for lawyers with significant experience handling these types of cases. See, *e.g.*, *Molino v. Bast Servs.*, No. 08 C 4399, 2011 WL 841891, at *8 (N.D. Ill. Mar. 7, 2011) (concluding in an FDCPA case that an hourly rate of $250 is reasonable for an attorney with three years of experience); *Day v. Check Brokerage Corp.*, No. ?, 2009 WL 4931739, at *3 (N.D. Ill. Dec. 15, 2009) (finding an hourly fee of $250 "appropriate and reasonable").

This Court has not been provided any information regarding Attorney Merchant's experience, any history of charging his clients $275 per hour, or any evidence of a market rate of

$275 per hour for attorneys doing this type of work in the Chicago area aside from the rather thin affidavit regarding Attorney Elenbaas's previous work. The Court does consider counsel's success in reaching a favorable settlement, but given the absence of support for Attorney Merchant's requested rate of $275 per hour, the Court concludes that a blended rate of $250 per hour is adequate compensation for the work performed by both of Plaintiffs' lawyers in this case.[4]

### C. Recovering for Time Expended Before Defendant was Named as a Party

Cases featuring multiple defendants but revolving around "a common core of facts" or based on "related legal theories" require counsel to focus on the litigation as a whole and not on individual defendants. *Hensley*, 461 U.S. at 435. District courts are directed to focus on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. In cases brought forth under fee-shifting statutes, the reward for a successful litigation is a fully compensatory fee.

Defendant Continental claims that it should not be held responsible for the payment of fees generated before it was a named party to the lawsuit. [64, at 10.] This contention relates to the following activities:

| Date | Work Performed | Hours |
|---:|---|---:|
| 9/1/2009 | Drafted complaint at law | 2 |
| 11/17/2009 | Drafted Initial Status Report | 2 |
| 12/6/2009 | Drafted First Amended Complaint at Law | 2 |

---

[4] This ruling is not meant to reflect unfavorably on Attorney Merchant; indeed, the Court believes that he did a fine job representing his client in this case. Rather, the minor reduction in his rate is the upshot of Plaintiff's failure to provide justification for the higher rate that she seeks for his work.

| | | |
|---|---|---|
| 12/7/2009 | Completed Drafting First Amended Complaint, filed same | 2 |
| 12/7/2009 | Telephone conference with OC Holloway | 0.1 |
| 12/7/2009 | Drafted Summons, and Corrected Summons for CRI, scanned yellow card | 2 |
| 12/7/2009 | Sent First Amended Complaint at Law to Process server | 0.1 |
| 12/8/2009 | Scanned and filed return of service | 0.2 |
| 1/27/2010 | Court for status hearing | 0.5 |
| 3/3/2010 | Telephone conference with client | 0.2 |
| 3/3/2010 | Draft Initial Status Report, researched Continental Recovery, drafted Second Amended Complaint printed out court call. | 1.3 |
| 3/4/2010 | Court for status, printed saved and docketed order | 1.3 |
| | Total: | 13.7 |

[64, at 8-10.]

While it is true that Continental was not a named Defendant when the original complaint was drafted on September 1, 2009, the events that led to Continental's eventual inclusion in the amended complaint involve a "common core of facts" and "related legal theories." *Hensley*, 461 U.S. at 435. The attempted repossession of Plaintiff's vehicle is the lynchpin of the litigation and all facets of the litigation emanate from that event. The harassment that Plaintiff allegedly endured stemmed from actions that bound Defendants Patelco and Continental together. Defendant Continental placed the allegedly libelous postcard on Plaintiff's property and was alleged to have been acting as Defendant Patelco's agent when it began collection actions against Plaintiff. [27 ¶¶ 10, 13-14.] The Court is persuaded by the fact that the work done prior to Continental's inclusion in the case can be attributed to the claims against it and, further, that Continental would have been named in the original complaint had Plaintiff known the identity of the party attempting to re-possess her vehicle at the outset. [71, at 5.] The type of work conducted by Attorney Merchant at the beginning of the litigation (i.e. drafting the complaint, research, etc.), is the type of work that properly would be charged to a client under normal

circumstances. The Court is not persuaded that because Defendant Continental was not named at the outset of the litigation, it should be exempt from charges emanating from the initial investigation and prosecution of a case in which it ultimately became a Defendant and settled claims that were related to the claims asserted in the original complaint. Accordingly, the Court apportions to Continental one-half of the fees associated with the 14 hours charged to the case between June 2, 2009 and March 3, 2010 – a total of 7 hours – at the $250 rate identified above.[5]

### D. Telephone Conversation & Correspondence Details

When a fee petition is "vague or inadequately documented, a district court may either strike the problematic entries * * * or reduce by a reasonable percentage." *Harper*, 223 F.3d at 604. In general, a request for attorneys' fees should provide reasonable detail and supporting affidavits from the prevailing party's counsel as to the work performed. *Garretto v. Elite Advisory Servs., Inc.*, 793 F. Supp. 796, 808 (N.D. Ill. 1992). Courts have denied portions of fee requests when there is insufficient detail and lack of explanation of the services rendered. See, e.g., *Goodwall Const. Co. v. Beers Const. Co.*, 824 F. Supp. 1044, 1060 (N.D. Ga. 1992), *aff'd and remanded*, 991 F.2d 751, 759 (Fed. Cir. 1993); *Stickle v. Heublein, Inc.*, 590 F. Supp. 630, 636-37 (W.D. Wis. 1984) ("inadequate documentation should result in a reduction downward"), *aff'd in part, rev'd in part on other grounds*, 716 F.2d 1550 (Fed. Cir. 1983). Defendant objects to the following telephone conferences between Attorney Merchant and Plaintiff on the grounds

---

[5] The Court has concluded that apportioning 50% of the attorneys' fees to Continental is appropriate. Even though there were three Defendants, the individual Defendant (Mr. Wainscott) was sued as an agent of Defendant Patelco, was represented by Patelco's counsel, and compromised the litigation along with Patelco through an Offer of Judgment [46]. In these circumstances, the Court believes that dividing responsibility for the fees evenly between Continental and Patelco is appropriate. As noted above, Patelco's offer of judgment included attorneys' fees and costs, so Plaintiff presumably has been made whole as to the fees and costs chargeable to Patelco. All that remains in this order is to determine the reasonable attorneys' fees and costs for which Continental is responsible pursuant to its Offer of Judgment.

that (1) Attorney Merchant has provided insufficient detail regarding the content of the conversations and (2) Plaintiff did not know of Continental's involvement at the time of the conversation as Continental was not a party to the lawsuit until the second amended complaint.

| Date | Work Performed | Hours |
|---|---|---|
| 6/2/2009 | Telephone conference with client | 0.2 |
| 6/4/2009 | Telephone conference with client | 0.1 |
| 6/8/2009 | Telephone conference with client | 0.2 |
| 6/18/2009 | Telephone conference with client | 0.1 |
| 6/18/2009 | Telephone conference with client | 0.2 |
| 6/26/2009 | Telephone conference with client | 0.1 |
| 7/6/2009 | Letter to client | 0.2 |
| 7/28/2009 | Telephone conference with client | 0.1 |
| 7/30/2010 | Telephone conference with client | 0.1 |
| 8/28/2009 | Telephone conference with client | 0.1 |
| 9/18/2009 | Telephone conference with client | 0.2 |
| 1/6/2010 | Telephone conference with client | 1 |
| 2/10/2010 | Telephone conference with client | 0.2 |
| 3/2/2010 | Telephone conference with client | 0.1 |
| 3/3/2010 | Telephone conference with client | 0.2 |
| 4/7/2010 | Telephone conference with client | 0.1 |
| | Total: | 3.2 |

[64, at 4-8.]

Additionally, Defendant objects to being billed for the July 6, 2009 letter to Plaintiff.

Although the Court would prefer to see at least some hint of the purpose for a call or letter, the Court "also recognizes that attorney-client privilege concerns often preclude a highly detailed description of the work performed." *Chicago Tribune Co. v. U.S. Dept. of Health and Human Servs.*, 70 F. Supp. 2d 832, 838 (N.D. Ill. 1998). Certainly some telephone correspondence with the client should be expected to properly prosecute the case – and in most cases turns out to be much less expensive than face-to-face meetings between attorney and client that might be necessary absent telephone or e-mail contacts. Here, 3.2 hours of attorney-client communication over a ten-month period leading up to a successful outcome in an FDCPA case is

not excessive. Defendant cites *Harper v. City of Chicago Heights* to bolster its assertion that Plaintiff's hours lack sufficient detail but *Harper* is inapposite because it refers to a work log that was compiled retrospectively. In the instant case, Plaintiff's attorneys kept their hourly records contemporaneously and documented their work adequately given the short duration of most of the tasks performed. Thus, the Court will allow a proportional recovery for all of the telephone conversations and correspondence.

### E. Miscellaneous Time, Task and Costs

Finally, Defendant Continental objects to the following charges:

> A. Payment of attorney time for April 20, 2010;
>
> B. Filing an appearance of another attorney on April 20, 2010;
>
> C. Payment of attorney fees for April 21, 2010; and
>
> D. Payment of attorney fees for any date after April 29, 2010, when Plaintiff accepted Defendant's Offer of Judgment.

[64, at 10.]

Attorney Elenbaas's appearance on April 21, 2010 is corroborated by his affidavit ("Exhibit B") attached to Plaintiff's Reply. [71-2, at 3.] The logical presumption is that Attorney Merchant discussed the matter with Attorney Elenbaas on April 20, 2010, so that Elenbaas would be up to speed for the court appearance on April 21, 2010. *Id.* The court appearance was most certainly the type of activity that would be charged to a client and is allowed, again apportioned fifty percent to Continental.

As to the contention that Plaintiff is entitled only to attorney fees up to the point of the offer of settlement, the Court agrees. As Defendant notes, Federal Rule of Civil Procedure Rule 68(a) states, in part, that "At least 14 days before the date set for trial, a party defending against a

claim may serve on an opposing party an offer to allow judgment on specified terms, *with the costs then accrued*." (emphasis added). Fed. R. Civ. P. 68(a). Once the settlement was reached, the clock stopped ticking. Thus, the fees listed from April 29, 2010 onwards may not be apportioned in any way to Defendant Continental. However, the fees incurred between March 3 and April 29, 2010 are apportioned 50% to Continental.

In sum, pursuant to the agreement of the parties requiring Defendant Continental to pay "reasonable attorneys' fees and costs accrued to date in an amount to be determined by the court" [55-1, at 1], the Court concludes that Continental is responsible to pay 50% of 18.3 hours at a rate of $250 per hour – a total amount of $2,287.50 in attorneys' fees. The Court also imposes $230.00 in costs on Continental – the service fee plus one-half of the filing fee. The total award in attorneys' fees and costs therefore is $2,517.50.

**IV. Conclusion**

For the reasons set forth above, Plaintiff's motion for attorneys' fees and costs is granted in part and denied in part. Plaintiff is awarded $2,517.50 in attorneys' fees and costs from Defendant Continental.

Dated: September 20, 2011

_____
Robert M. Dow, Jr.
United States District Judge